919 P.2d 594 (1996)
129 Wash.2d 565
U.S. LIFE CREDIT LIFE INSURANCE COMPANY, Respondent,
v.
David O. WILLIAMS and Gloria Williams, husband and wife, Petitioners.
No. 63013-5.
Supreme Court of Washington. En Banc.
Argued January 17, 1996.
Decided July 25, 1996.
*595 Stephen L. Palmberg, Grand Coulee, WA, for petitioners.
Chase, Hayes & Kalamon, Richard E. Hayes, Spokane, WA, for respondent.
ALEXANDER Justice.
We granted review of a decision of the Court of Appeals, Division Three, affirming a summary judgment of the Spokane County Superior Court in favor of U.S. Life Credit Life Insurance Company and against David and Gloria Williams. We affirm the Court of Appeals, concluding, as it did, that the extrinsic evidence offered by the Williamses did not raise a genuine issue of material fact regarding the meaning of certain handwritten markings on a certificate of insurance.
On July 22, 1988, David and Gloria Williams purchased a vehicle from Easy Way Auto, a Spokane car dealership. As part of the transaction, the Williamses agreed to have Easy Way purchase insurance for them. The sales contract, on which Easy Way represented itself to be an agent for U.S. Life Credit Life Insurance Company, stated that the purpose of the insurance purchased through Easy Way was "[t]o make payments on this contract while I am disabled, and to pay the unpaid balance [of this contract] if I die." Clerk's Papers at 18. The word "I" was defined in the contract as "each buyer who signs ... as Buyer." Clerk's Papers at 17. Both David and Gloria Williams signed the sales contract, their signatures following a provision that stated: "Please purchase insurance for me of the type and for the premium amount shown above." Clerk's Papers at 15.
At the same time the sales contract was executed, Easy Way presented the *596 Williamses with a certificate of insurance issued by U.S. Life. The certificate listed David Williams as "Insured Obligor" and Gloria Williams as "Joint Obligor." Clerk's Papers at 15. The certificate contained printed boxes that could be checked to indicate the types of insurance coverage selected by the insured.[1] Double x's were handwritten into the boxes designating "Joint Decreasing Term Life" and "Disability Coverage." Clerk's Papers at 15. Next to the designation "Disability Coverage" were the printed words "Insured Obligor Only." Clerk's Papers at 15. Furthermore, the certificate stated in at least six other places that the disability coverage applied to the "Insured Obligor Only." Clerk's Papers at 15-16.
On March 2, 1989, Gloria Williams sustained disabling injuries in an auto accident. She applied to U.S. Life for disability coverage. U.S. Life made one payment to her and then refused to make further payments, claiming that only David Williams, as the insured obligor, was covered by the disability insurance provisions of the insurance policy.
The Williamses brought suit against U.S. Life in Spokane County Superior Court. They claimed in their suit that they were entitled to receive disability coverage under the insurance certificate issued by U.S. Life. U.S. Life responded by filing a separate action, also in Spokane County Superior Court, for a judgment declaring that Gloria Williams was not covered by the insurance certificate. U.S. Life then moved for summary judgment in the latter case. In opposition to U.S. Life's motion, Gloria Williams submitted her affidavit in which she contended that she and her husband had contracted for disability insurance coverage for both of them. She also asserted that they had questioned Easy Way Auto regarding the words "Insured Obligor" that appeared on the insurance certificate following the words disability coverage and told Easy Way that they "would not buy the vehicle [they] were considering purchasing without disability insurance coverage on both of [them]." Clerk's Papers at 27. Gloria Williams asserted, additionally, that Easy Way's representative advised them that Easy Way Auto "could and would provide the requested coverage" to both of them and "that the dual X's showed that all the insurance coverages issued, including the disability insurance coverage, covered both of us and not just my husband, who was stated to be the `insured obligor' on the Certificate." Clerk's Papers at 27. As further evidence of coverage for both of them, the Williamses offered the sale agreement between them and Easy Way.
In granting U.S. Life's motion for summary judgment, the trial court indicated that it did not consider the evidence presented by Gloria Williams to the effect that she was provided with disability coverage, concluding that its admission was barred by the parol evidence rule. The Court of Appeals reversed and remanded, concluding that this evidence was admissible in light of this court's decision in Berg v. Hudesman, 115 Wash.2d 657, 801 P.2d 222 (1990), as evidence relevant to the intent of the parties in putting double x's in the box next to the words "Disability Coverage (Insured Obligor Only)." Clerk's Papers at 15.
On remand, U.S. Life again moved for summary judgment. The trial court granted its motion, concluding that the evidence presented by the Williamses did not raise a genuine issue of material fact as to the terms of the insurance certificate and that "Gloria Williams is not an insured obligor" under the insurance certificate. Clerk's Papers at 71. The Williamses again appealed to the Court of Appeals, Division Three, which affirmed.
When reviewing an order of summary judgment, an appellate court engages in the same inquiry as the trial court. In re Estates of Hibbard, 118 Wash.2d 737, 744, 826 P.2d 690 (1992). Summary judgment should be granted only when it can be said that, after considering the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Hibbard, 118 Wash.2d at 744, 826 P.2d 690. Whether the Williamses *597 raised a material fact question is the only issue before us.
A court's primary task in interpreting a written contract is to determine the intent of the parties. Eurick v. Pemco Ins. Co., 108 Wash.2d 338, 340, 738 P.2d 251 (1987). The intent of the contracting parties, however, is not always easily gleaned from the words used in the contract. In that regard, we noted in Berg that "`[a] word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.'" Berg, 115 Wash.2d at 664, 801 P.2d 222 (quoting Towne v. Eisner, 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918)).
In order to aid courts in ascertaining the intent of the parties to a contract, we adopted the "context rule" in Berg. Berg, 115 Wash.2d at 667, 801 P.2d 222. Under that rule, extrinsic evidence is admissible in order to assist the court in ascertaining the intent of the parties and in interpreting the contract. Berg, 115 Wash.2d at 667, 801 P.2d 222. Such evidence is admissible regardless of whether or not the contract language is deemed ambiguous. Berg, 115 Wash.2d at 669, 801 P.2d 222. At the same time, however, we cautioned that extrinsic evidence cannot be considered for the purpose of varying the terms of a written contract:
May we say here that we are mindful of the general rule that parol evidence is not admissible for the purpose of adding to, modifying, or contradicting the terms of a written contract.... Such evidence, however, is admitted, not for the purpose of importing into a writing an intention not expressed therein, but with the view of elucidating the meaning of the words employed. Evidence of this character is admitted for the purpose of aiding in the interpretation of what is in the instrument, and not for the purpose of showing intention independent of the instrument.
Berg, 115 Wash.2d at 669, 801 P.2d 222 (quoting J.W. Seavey Hop Corp. v. Pollock, 20 Wash.2d 337, 348-49, 147 P.2d 310 (1944)). Furthermore, "[u]nilateral or subjective purposes and intentions about the meanings of what is written do not constitute evidence of the parties' intentions." Lynott v. National Union Fire Ins. Co., 123 Wash.2d 678, 684, 871 P.2d 146 (1994).
As illustrated by the case before us, the rules we enunciated in Berg may, on occasion, be difficult to harmonize. The Williamses assert that, under Berg, the extrinsic evidence about the circumstances leading to the placement of the two x's on the insurance contract raises a genuine issue of material fact about what the parties intended in relation to disability insurance coverage. U.S. Life, on the other hand, asserts that the extrinsic evidence presented by the Williamses should not be deemed to have raised a material fact issue about the intent of the parties because it contradicts other terms of the insurance certificate. We are inclined to agree with U.S. Life because, were we to hold in favor of the Williamses, we would be flying in the face of the portion of our decision in Berg that indicates that extrinsic evidence should not be considered for the purpose of contradicting and modifying other written parts of the insurance contract. That is so because this evidence is contrary to other clear and unambiguous language in the insurance certificate to the effect that disability insurance coverage was provided only to the "insured obligor."[2] Although the Williamses seek to show that the placement of double x's next to the box indicating "disability coverage" was meant to show that Gloria Williams acquired disability coverage, the presence of two x's does not, by itself, plainly indicate that dual coverage was provided, nor does it even render the certificate ambiguous. To adopt the Williamses' argument that this evidence tends to show that disability coverage was to be provided to both of them would amount to a rewriting of the insurance certificate. We are loathe to do that because "[i]t is the duty of the court to declare the meaning of what is *598 written, and not what was intended to be written." Berg, 115 Wash.2d at 669, 801 P.2d 222 (quoting Pollock, 20 Wash.2d at 349, 147 P.2d 310 (1944)).
Our holding here should not be viewed as a retreat from Berg. In adopting the context rule in Berg, we recognized that extrinsic evidence may be helpful in elucidating the meaning of the words the parties used in an agreement, even if the contract is not ambiguous. It was not, however, our intention in adopting that rule to allow such evidence to be employed to emasculate the written expression of that intent.
In our judgment, the Court of Appeals was correct in holding that extrinsic evidence presented by the Williamses did not raise a genuine issue of material fact as to the parties intent in placing the two x's on the insurance certificate.
Affirmed.
DOLLIVER, SMITH, JOHNSON, MADSEN, TALMADGE and SANDERS, JJ., concur.
GUY, Justice (concurring).
I concur. I write separately to express my concern over the confusion wrought by this court's opinion in Berg v. Hudesman, 115 Wash.2d 657, 801 P.2d 222 (1990). I agree with the theory expressed in Berg, i.e., that the meaning of words in a contract cannot always be determined without reference to the context in which they were written. However, when a written, integrated contract, considered as a whole, is clear and unambiguous on its face, I would hold that extrinsic evidence is not admissible for the purpose of showing that the contract does not reflect the intent of the parties. "It is the duty of the court to declare the meaning of what is written, and not what was intended to be written." J.W. Seavey Hop Corp. v. Pollock, 20 Wash.2d 337, 349, 147 P.2d 310 (1944), quoted with approval in Berg, at 669, 801 P.2d 222. See also Lynott v. National Union Fire Ins. Co., 123 Wash.2d 678, 697, 871 P.2d 146 (1994) (Guy, J., dissenting); Swanson v. Liquid Air Corp., 118 Wash.2d 512, 550, 826 P.2d 664 (1992) (Andersen, J., concurring).
DURHAM, C.J., concurs.
NOTES
[1] Five types of insurance coverage were offered. The certificate described them as follows: Decreasing Term Life, Joint Decreasing Term Life, Joint Level Term Life, Level Term Life, and Disability Coverage (Insured Obligor Only). Clerk's Papers at 15.
[2] The sales contract offered by the Williamses is arguably consistent with their position that it was their intent to obtain disability coverage and that Easy Way agreed to purchase such coverage for them. U.S. Life was not, however, a party to that agreement and the question of whether Easy Way's actions were binding on U.S. Life on an agency theory is not before us.