[No. 37279-3-I.   Division One.   April 28, 1997.]

FARRINGTON CORPORATION, *Appellant*, v.
COMMONWEALTH LAND TITLE INSURANCE COMPANY OF
PHILADELPHIA, *Respondent*.

*William K. McInerney, Jr.* and *McInerney & Baker*, for appellant.

*John S. Ebel, Barbara H. Schuknecht*, and *McNaul Ebel Nawrot Helgren & Vance, P.L.L.C.*, for respondent.

COLEMAN, J. — In 1986, Farrington Corporation bought binder insurance for a residential home from Commonwealth Land Title Insurance Company of Philadelphia. Farrington's sole officer, Mandel Kuber, lived in the home with his wife. Two of Kuber's creditors subsequently brought motions for quiet title to the property, alleging that Kuber had fraudulently conveyed the property to Farrington to shield his assets. When Farrington requested Commonwealth's defense against the actions, Commonwealth first claimed that it had issued no insurance policy. Later, however, Commonwealth admitted that it should have automatically issued an insurance policy following the expiration of the binder insurance. Commonwealth still, however, refused to provide coverage, asserting that the claims were not covered under the policy's exclusions. Farrington sued and Commonwealth moved for summary judgment, which was granted.

Farrington appeals, arguing that the exclusions are inapplicable because Commonwealth never provided them to Farrington. We need not decide whether the exclusions are applicable because we hold that Commonwealth had no duty to defend the creditors' claims under the title insurance contract itself.

### Facts

Farrington's shareholders are Mandel's children, Doug-

las, Mark, and Anne Kuber. The corporation was formed in December 1985, and it purchased a residential property in Seattle in May 1986. Incident to this purchase, Farrington obtained a title insurance binder from Commonwealth. Before providing the binder, Commonwealth had sent Farrington a commitment for title insurance. The Commitment indicated that other exclusions would follow. The parties, however, disagree as to whether those exclusions were ever provided.

The binder provided for insurance of $200,000 "subject only to the exceptions shown herein and to all of the provisions of the policy[.]" The binder further stated that it was "null and void 730 days from the date shown above or when the policy is issued, whichever shall first happen."

In April 1990, Antoine Puech brought a complaint to quiet title and execute on judgment against Mandel Kuber and Farrington. The complaint alleged that Mandel was the original stockholder of Farrington and that he had transferred his stock to his children. The complaint further claimed that there was a unity of ownership and interest between Mandel and Farrington. The complaint therefore asked the court to hold that the Seattle home was Mandel's property and to quiet title to him. The complaint further alleged that the acts were intended to delay and hinder Puech from executing on the Seattle property to satisfy his judgment lien and asked the court to enter a judgment that the property was subject to Puech's judgment as of September 17, 1987. In January 1991, Franklin Bonin filed a nearly identical quiet title action, asking the court to enter a judgment that the property was subject to his lien as of January 28, 1991.

In July 1991, Farrington's counsel tendered defense of these lawsuits to Commonwealth under Farrington's policy. Commonwealth refused to accept, claiming that it had no record that a policy was ever issued to Farrington. Commonwealth claimed that the binder became null and void after 730 days. Commonwealth further claimed that even if a policy had been issued, the claims were excluded

because they were in the particular knowledge of Farrington and because they involved postpolicy events.

After Commonwealth's continued refusals to represent Farrington, Farrington retained outside counsel to defend the Puech and Bonin actions. The Puech action settled, and Farrington won at trial in the Bonin action. Farrington claims that it paid over $160,000 in legal fees and suffered additional consequential damage resulting from Commonwealth's refusal to defend.

In February 1994, Farrington sued Commonwealth. During discovery, Commonwealth at first denied that it had issued Farrington a title insurance policy. But in August 1994, Commonwealth's Clayton Janecky stated in his deposition that a rate manual existed that would explain Commonwealth's responsibility under a binder. That manual provided that Commonwealth should have automatically issued Farrington a title insurance policy at the expiration of the binder period at no additional charge.

On January 13, 1995, Commonwealth issued Farrington that policy. Commonwealth still, however, denied that it should have covered Farrington. The policy insured Farrington for claims involving any defect in or lien or encumbrance on such title. The policy also provided a duty to defend Farrington in any action based on an alleged defect, lien, encumbrance, or other matter insured against by the policy. The policy excluded from coverage:

> 3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy; or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

Commonwealth moved for summary judgment. The court granted its motion, dismissing Farrington's claims with prejudice.

## Analysis

■ When reviewing an order of summary judgment, the appellate court engages in the same inquiry as the trial court. *U.S. Life Credit Life Ins. Co. v. Williams*, 129 Wn.2d 565, 569, 919 P.2d 594 (1996). Summary judgment should be granted only when, after considering the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Williams*, 129 Wn.2d at 569.

We initially consider whether the policy's insuring clause, without reference to the exclusions, insured Farrington for defense of the Puech and Bonin claims. Commonwealth claims that the policy did not insure against the claims because the alleged liens and defects did not exist when the policy was issued. We agree.

■ Title insurance is "[i]nsurance against loss or damage resulting from defects or failure of title to a particular parcel of realty, or from the enforcement of liens existing against it *at the time of the insurance*." BLACK'S LAW DICTIONARY 724 (5th ed. 1979) (emphasis added). Thus, unlike most insurance, which aims to reduce risk from unforeseen future events, title insurance primarily seeks to eliminate risks and losses caused by defects in title arising out of past events. WASHINGTON STATE BAR ASS'N, REAL PROPERTY DESKBOOK § 35.3, at 35-3 (2d ed. 1986). Title insurance therefore has no relation to liens or encumbrances that arise thereafter. JOHN A. APPLEMAN, INSURANCE LAW & PRACTICE § 5209, at 61 (1981).

Here, the title was not defective when Farrington purchased the property. Rather, the allegation is that the wrong entity took the property from escrow. Moreover, the creditors could not and did not assert that their liens preceded the purchase of the property because without

Farrington's purchase, they would clearly have no claim. Thus, we hold that Commonwealth had no duty to defend the liens under the policy because title insurance does not insure against defects in title arising after the property is purchased.

Moreover, a challenge to title based on Farrington's allegedly tortious or fraudulent acts does not constitute a defect on title. *See Bidart v. American Title Ins. Co.*, 103 Nev. 175, 734 P.2d 732, 734 (1987). Rather, such challenges are an attack on the manner in which the buyer acquired valid title. *Bidart*, 734 P.2d at 734. Otherwise, a title company would have to defend the insured despite an otherwise impeccable title in any action brought against the insured seeking rescission based on the insured's tortious conduct. *Safeco Title Ins. Co. v. Moskopoulos*, 116 Cal. App. 3d 658, 172 Cal. Rptr. 248, 252, 18 A.L.R.4th 1301 (Ct. App. 1981). Such an outcome would not accord with the purpose of title insurance.

While Puech and Bonin used the term "quiet title" in their pleadings, they were clearly not seeking to quiet title. *See* BLACK'S LAW DICTIONARY 1124 (5th ed. 1979) (quiet title action is a proceeding to establish the plaintiff's title to land). Rather, looking at the complaints, the creditors unambiguously sought to establish postpurchase liens on the property. Because the gravamen of the complaints was to establish such liens, the creditors' mistaken label does not render Commonwealth liable for these uninsured claims.

Farrington argues that even if the Puech and Bonin claims were not covered under the policy, this court should adopt "the reasonable expectations doctrine" because Commonwealth never provided the policy. Under this doctrine, Farrington's reasonable expectations under the policy would be honored, despite its actual lack of coverage under the policy. *See Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 419 P.2d 168, 173, 54 Cal. Rptr. 104 (1966). We do not, however, believe that Farrington's expectation of coverage was reasonable because title insurance, by its very definition, does not insure against postpolicy events. We therefore need not decide whether this doctrine should be adopted.

We also need not address whether the exclusions were applicable here because we hold that regardless of the exclusions, Farrington's claims were not covered.

We next consider whether Commonwealth violated its duty of good faith. Farrington argues that Commonwealth violated its duty by denying that Farrington had a policy without conducting a proper investigation. *See* RCW 48.01.030.

■ RCW 48.01.030 requires those involved in the insurance business to act in good faith in all insurance matters. A denial of coverage without reasonable investigation breaches this duty of good faith. *See Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 917, 792 P.2d 520 (1990).

Here, material issues of fact exist as to whether Commonwealth conducted a reasonable investigation that would have uncovered the policy. There is, however, no prejudice. Commonwealth stated in its first letter to Farrington that it did not believe such a claim would be covered even if a policy existed. Thus, because we hold that the policy provided no coverage, we reject Farrington's bad faith claim.

Affirmed.

BAKER, C.J., and AGID, J., concur.