961 P.2d 933 (1998)
136 Wash.2d 269
COVENTRY ASSOCIATES, Petitioner,
v.
AMERICAN STATES INSURANCE COMPANY, Respondent.
No. 65850-1.
Supreme Court of Washington, En Banc.
Argued June 17, 1998.
Decided September 3, 1998.
*934 Law Offices of Mark Alan Johnson, Inc., Mark A. Johnson, Scott A. Samuelson, Seattle, for Petitioner.
Bullivant, Houser, Bailey, Pendergrass & Hoffman, Robert F. Riede, Jerret E. Sale, Deborah L. Carstens, Seattle, for Respondent.
Reed, McClure, William R. Hickman, Pamela A. Okano, Seattle, Amicus Curiae on Behalf of Mutual of Enumclaw Insurance United Services Auto Association & State Farm Fire & Casualty Company.
Lane, Powell, Spears & Lubersky, David M. Schoeggl, Linda B. Clapham, Tammy L. Lewis, Seattle, Amicus Curiae on Behalf of London Market Insurers.
JOHNSON, Justice.
The main issue presented in this appeal is whether an insured may bring a bad faith or Consumer Protection Act (CPA) claim against its insurer when the insurer conducted a bad faith investigation of the insured's claim but the denial of coverage was ultimately determined to be correct. American States Insurance Company (American States) denied Coventry Associates' (Coventry) claim after a mud slide damaged an apartment complex Coventry was constructing in Renton, Washington. Coventry filed suit against American States, alleging breach of contract, bad faith, and CPA violations. The trial court granted American States' motion for partial summary judgment on the coverage issue and dismissed Coventry's remaining claims. Coventry appealed to the Court of Appeals, which affirmed. Coventry Assocs. v. American States Ins. Co., 86 Wash.App. 845, 939 P.2d 1245 (1997). We granted Coventry's petition for review and reverse and remand the case for trial.

FACTS
In 1990, Coventry was constructing an apartment complex in Renton, Washington; the construction project was located on the side of a hill. Coventry built a retaining wall to stabilize the hillside during construction but unusually heavy rainfall in the area caused mud to slide into the retaining wall. The retaining wall collapsed and mud and water flowed into the main construction site, damaging the property. Coventry ceased work on the project.
Coventry submitted a claim to American States, its insurer on the construction project. An American States adjuster briefly investigated the project site, determined the damage was to the retaining wall, and denied the claim because Coventry's policy had an exclusion for damage to that structure. The adjuster did not investigate the cause of the damage or any loss of business coverage because he did not believe that Coventry had a claim for business loss. The adjuster did not investigate damage to the construction project other than that to the retaining wall. The adjuster admitted he looked only at two of the six forms comprising Coventry's policy before he denied coverage. The adjuster later testified he never considered whether Coventry had a business loss claim even though it had some business loss coverage.
Coventry filed suit against American States alleging breach of the insurance contract, *935 bad faith, and CPA violations. The parties agreed the damage was not solely to the retaining wall, the project was seriously damaged by the mud slide, and weather was the proximate cause of the damage. American States argued the loss was not covered because Coventry's policy contained a contingent "weather conditions" exclusion precluding coverage from damage resulting from a landslide caused by rainfall.
The trial court granted American States' motion for summary judgment on the breach of contract claim. It also granted American States' motion to dismiss the remaining bad faith and CPA claims, concluding those claims could not exist in the absence of coverage. The Court of Appeals affirmed and, as noted above, we granted Coventry's petition for review, which raised the following issues:
(1) Does Washington provide a bad faith or CPA cause of action to first party insureds?
(2) If an insurer acts in bad faith, is there a presumption of harm?
(3) What are the remedies available to an insured if its insurer has acted in bad faith?

ANALYSIS
American States asserts that "Coventry concedes that the loss is not subject to coverage under the American States policy." Resp't Answer to Pet. for Review at 5. Coventry does not dispute this assertion nor does it raise the issue of coverage in its briefing to this court. For purposes of review, American States concedes it "acted in bad faith" in investigating Coventry's claim. However, American States contends its bad faith is not actionable, as a matter of law, because "the policy issued to Coventry did not provide coverage for the loss." Resp't Answer to Pet. for Review at 10. Essentially, American States argues because its denial of Coventry's claim ultimately proved to be correct, Coventry was not harmed as a result of American States' bad faith investigation of Coventry's claim.
Coventry argues an insured suffers harm from a bad faith investigation of its claim regardless of whether the denial of coverage eventually turns out to be appropriate. Coventry asserts it suffered harm because a portion of its premium went for the security of fair claims' administration that American States did not provide. Coventry further argues insureds are generally harmed when there is no deterrent to insurers who handle a claim in a bad faith manner but ultimately prevail on the coverage issue.
Insurance companies must conduct their relations with their insureds in good faith. RCW 48.01.030 states, "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters."[1] Washington Administrative Code (WAC) 284-30 covers unfair claims settlement and trade practices by insurance companies. The purpose of WAC 284-30 is, in part, to "define certain minimum standards which, if violated with such frequency as to indicate a general business practice, will be deemed to constitute unfair claims settlement practices." WAC 284-30-300. As the Court of Appeals noted, the unfair practices listed in WAC 284-30 include misrepresenting pertinent facts and refusing to pay without a reasonable investigation (WAC 284-30-330), failure to disclose all relevant policy provisions (WAC 284-30-350), and failure to state the specific grounds for denial of a claim (WAC 284-30-380). Coventry Assocs., 86 Wash.App. at 848-49, 939 P.2d 1245.
As noted above, American States concedes, for purposes of this appeal, that it acted in bad faith in investigating Coventry's claim. As an element of every bad faith or CPA action, however, an insured must establish it was harmed by the insurer's bad faith acts. Safeco Ins. Co. of Am. v. Butler, 118 Wash.2d 383, 389, 823 P.2d 499 (1992) ("a *936 showing of harm is an essential element of an action for bad faith handling of an insurance claim"); Industrial Indem. Co. v. Kallevig, 114 Wash.2d 907, 920, 792 P.2d 520, 7 A.L.R.5th 1014 (1990) (in CPA actions, plaintiff must show, among other factors, an unfair or deceptive act or practice which "causes injury to the party in his business or property").
The Court of Appeals agreed with American States and determined Coventry was unable to establish harm, even though the denial of Coventry's claim may have been "procedurally deficient." Coventry Assocs., 86 Wash.App. at 851, 939 P.2d 1245. According to the Court of Appeals, "mere procedural errors in handling a specific claim do not support an action for bad faith because the errors do not harm the insured...." Coventry Assocs., 86 Wash.App. at 850, 939 P.2d 1245. American States agrees and asserts that in the absence of coverage, a first party insured may not have a cause of action for bad faith.

Issue # 1Does a First Party Insured Have a Cause of Action for Bad Faith Investigation in Washington?
This issue is one of first impression in the context of a first party action. In the context of a third party reservation of rights case, once an insured meets the burden of establishing an insurer's bad faith, a rebuttable presumption of harm arises. Safeco Ins. v. Butler, 118 Wash.2d at 390, 823 P.2d 499. See also Kirk v. Mount Airy Ins. Co., 134 Wash.2d 558, 564, 951 P.2d 1124 (1998) ("Once the insurer breaches an important benefit of the insurance contract, harm is assumed, the insurer is estopped from denying coverage, and the insurer is liable for the judgment.").
In this case, the Court of Appeals did not discuss Kirk and held that Safeco Ins. does not "authorize bad faith or Consumer Protection Act claims in the absence of coverage." Coventry Assocs., 86 Wash.App. at 850, 939 P.2d 1245. In distinguishing Safeco Ins., the Court of Appeals concluded that "harm is rebuttably presumed in that narrow circumstance where the insurer's promise to defend would entitle the insured to coverage under promissory estoppel if the insured proves bad faith." Coventry Assocs., 86 Wash.App. at 850, 939 P.2d 1245. American States agrees and argues that Safeco Ins. and Kirk have no application to first party claims because "[t]he rationale for imposing the presumption of harm in the context of third-party coverage does not arise in a first-party context." Resp't Supplemental Br. at 7.
Coventry argues our decisions in Safeco Ins. and Kirk control this case. Coventry asserts that the same policy underpinnings of Safeco Ins. and Kirk, upon which this court based its rebuttable presumption of harm analysis, apply here. Coventry also argues an insurer's duties to an insured are not limited to the payment of a covered claim. Coventry states: "Insurance consumers pay for and are entitled to the security that their insurers will investigate fairly and honestly. Failure to recognize a cause of action in the instant circumstances will encourage insurers to litigate, not investigate, significant property damage claims." Pet. for Review at 11-12.
Coventry relies on Deese v. State Farm Mut. Auto. Ins. Co., 172 Ariz. 504, 838 P.2d 1265 (1992). In that case, the plaintiff's insurer denied partial payment to the plaintiff insured for medical treatment the insurer deemed unnecessary. The insured brought suit for breach of contract and bad faith. The jury found for the insurer on the contract claim but awarded the insured compensatory damages on her bad faith claim. The Arizona Supreme Court affirmed, stating, "a plaintiff may simultaneously bring an action both for breach of contract and for bad faith, and need not prevail on the contract claim in order to prevail on the bad faith claim, provided plaintiff proves a breach of the implied covenant of good faith and fair dealing." Deese, 172 Ariz. at 509, 838 P.2d 1265. In so holding, the Arizona Supreme Court relied on its previous decision in Rawlings v. Apodaca, 151 Ariz. 149, 726 P.2d 565 (1986), where that court faced a similar issue and declined to adopt the insurer's reasoning that actionable bad faith is limited only to the unfounded refusal or delay in payment of a valid claim. Instead, the Rawlings court stated:

*937 Failure to perform the express covenant to pay the claim is not the sine qua non for an action for breach of the implied covenant of good faith and fair dealing.
. . . .
The implied covenant is breached, whether the carrier pays the claim or not, when its conduct damages the very protection or security which the insured sought to gain by buying insurance.
Rawlings, 151 Ariz. at 157, 726 P.2d 565 (citing Noble v. National Am. Life Ins. Co., 128 Ariz. 188, 189, 624 P.2d 866 (1981)). See also White v. Unigard Mut. Ins. Co., 112 Idaho 94, 730 P.2d 1014 (1986) (holding an insured may sue for bad faith, even if the claim is not covered, when the insurer intentionally and unreasonably delays payment on a claim and the delay harms the insured).
The Court of Appeals here distinguished Deese and White on the ground that, absent a covered loss, the failure to investigate must amount to a substantial impact on the insured in order to provide the basis of a bad faith or CPA claim. Coventry Assocs., 86 Wash.App. at 849-50, 939 P.2d 1245. American States would have us adopt the same "no harm, no foul" rule, in which bad faith is not actionable, as a matter of law, when the insured's policy does not provide coverage for the loss. We decline to do so.
We hold an insured may maintain an action against its insurer for bad faith investigation of the insured's claim and violation of the CPA regardless of whether the insurer was ultimately correct in determining coverage did not exist. An insurer's duty of good faith is separate from its duty to indemnify if coverage exists. This result creates no insurmountable burden on the insurer. The insurer is only required to fulfill its contractual and statutory obligation to fully and fairly investigate the claim. The problem arises when the insurer fails to investigate, in bad faith, thereby placing the insured in the difficult position of having to perform its insurer's statutory and contractual obligations.
Although American States' all or nothing approach is appealing, it does not recognize the jurisprudence this court has established regarding the tortious nature of a bad faith claim nor does it recognize that insurers have a general duty of good faith in their actions with their insureds. Tank v. State Farm Fire & Cas. Co., 105 Wash.2d 381, 385-86, 715 P.2d 1133 (1986) ("The duty to act in good faith or liability for acting in bad faith generally refers to the same obligation.... the fiduciary relationship existing between the insurer and insured.... This fiduciary relationship ... implies more than `honesty and lawfulness of purpose'.... It implies `a broad obligation of fair dealing' and a responsibility to give `equal consideration' to the insured's interests.") (emphasis added) (quoting Tyler v. Grange Ins. Ass'n, 3 Wash.App. 167, 173, 177, 473 P.2d 193 (1970)).[2]See also Fireman's Fund Ins. Cos. v. Alaskan Pride Partnership, 106 F.3d 1465, 1470 (9th Cir.1997) (insurer's reliance on First Circuit Court of Appeals case holding that failure to conduct a reasonable investigation could not alone support a finding of bad faith is "misplaced" because "[t]hat is not true of Washington law").
Under American States' proposed rule, insurers would have a duty of good faith toward their insureds only when coverage was required. That reasoning begs the question and runs counter to our previous holdings.[3]
This is not to say an insurer is required to pay claims which are not covered by the contract or take other actions inconsistent with the contract. Of course, insurance companies, like every other organization, are going to make some mistakes. As *938 long as the insurance company acts with honesty, bases its decision on adequate information, and does not overemphasize its own interests, an insured is not entitled to base a bad faith or CPA claim against its insurer on the basis of a good faith mistake.
Here, the Court of Appeals procedural/substantive distinction is not based on the insurance contract or the insured's statutory obligations. In fact, under the insured's statutory obligations, the question becomes a precise one: either the insurer complies with those duties or it does not. When the insurer does not comply with those obligations in bad faith, a cause of action exists. We agree with one commentator who states:
The implied covenant of good faith and fair dealing in the policy should necessarily require the insurer to conduct any necessary investigation in a timely fashion and to conduct a reasonable investigation before denying coverage. In the event the insurer fails in either regard, it will have breached the covenant and, therefore, the policy.
1 Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies and Insureds § 2.05, at 38 (3d ed.1995).

Issue # 2Is There a Presumption of Harm?
As noted above, to maintain a cause of action based on an insurer's bad faith or CPA violation the insured must establish it was harmed. While we hold the cause of action is available to first party insureds, we decline to hold in the first party context a rebuttable presumption of harm exists once an insured acts in bad faith. While a rebuttable presumption of harm exists as a result of an insurer's bad faith act in the third party context, that is so because insurers have a heightened duty of good faith in such situations. See Tank, 105 Wash.2d at 387, 715 P.2d 1133 ("the potential conflicts of interest between insurer and insured inherent in this type of defense [reservation of rights] mandate an even higher standard: an insurance company must fulfill an enhanced obligation to its insured as part of its duty of good faith"). Because the potential conflict of interest does not exist in the first party context, we do not think a rebuttable presumption of harm is warranted.
This is not to say that a first party insured suffers no harm when its insurer conducts a bad faith investigation of the claim. When an insurer fails to adequately investigate an insured's claim, the insured must either perform its own investigation to determine if coverage should have been provided or take no action at all. In either situation, the insured does not receive the full benefit due under its insurance contract.
American States, however, argues that just because an insured pays a premium, it is not entitled to specific investigatory services. "Coventry did not pay a premium for investigation; it paid a premium for insurance. The premium is consideration for the contract, not for insurance services, whether claims handling, underwriting, or commissions to agents. No part of the premium is dedicated to any particular cost of insurance or of conducting insurance business." Resp't Answer to Pet. for Review at 15.[4] American States also asserts that wrongfully denying an insured's claim and the attendant consequences of doing so are sufficient incentives to keep insurers from acting in bad faith.
While the threat of the consequences of wrongfully denying an insured's claim might provide incentive to insurers to act in good faith as a matter of policy, that argument ignores the fact the duty of good faith is separate from the duty to pay for a claim when required to do so. Contrary to American States' and amicus Insurance Companies' assertions, an insured receives more for its premium than just the possibility its claim will be covered when appropriate. In the relationship between the insured and insurer, the insurer receives both the premium and control over the arrangement. In first party situations, the insurer establishes the conditions for making and paying claims. The *939 insurer evaluates the claim, determines coverage, and assesses the monetary value of the coverage. Thus, the insurance contract brings the insured a certain peace of mind that the insurer will deal with it fairly and justly when a claim is made.[5] Conduct by the insurer which erodes the security purchased by the insured breaches the insurer's duty to act in good faith. See William M. Shernoff et al., Insurance Bad Faith Litigation § 3.04[5], at 3-26 (1991).
The record establishes that Coventry incurred certain expenses as a result of American States' bad faith investigation. For example, Coventry hired geotechnical and civil engineers to review the facts and circumstances surrounding the incident causing damage to the construction site. Coventry also hired insurance experts to determine if coverage was denied in bad faith. To the extent Coventry can establish it incurred expenses as a direct result of American States' breach of contract and bad faith actions, it was harmed.

Issue # 3 What Remedies are Available to an Insured if its Insurer Has Acted in Bad Faith?
Once an insured has established harm resulting from the bad faith investigation, the insured is entitled to an appropriate remedy. Coventry argues coverage by estoppel is the appropriate remedy because it gives insurers a strong disincentive to act in bad faith and protects the insured from such conduct. In the alternative, Coventry suggests it is entitled to recover "the portion of the premium it paid to American States for claims administration" because American States should not be entitled to collect a premium, act in bad faith in using a portion of that premium, and then retain the entire premium amount. Pet. for Review at 20.
American States asserts that Coventry is not entitled to either a return of a portion of its premium payment or coverage by estoppel. With regard to a return of a portion of the premium paid, American States argues that "[h]arm based upon a computation of the value of services from the insurer is entirely speculative." Resp't Answer to Pet for Review at 18. With regard to coverage by estoppel, American States argues that coverage by estoppel arises only in third party reservation of rights cases.
Because actionable bad faith is a tort, a plaintiff should not be limited to the economic damages within the contemplation of the parties at the time the contract was made. Safeco Ins., 118 Wash.2d at 393-94, 823 P.2d 499. In Safeco Ins., a third party reservation of rights case, we held coverage by estoppel was the appropriate remedy. Safeco Ins., 118 Wash.2d at 392, 823 P.2d 499. we also indicated that coverage by estoppel was appropriate in bad faith cases where coverage was appropriately denied, stating, "an insurer who acts in bad faith should be estopped from denying coverage, even where an otherwise good policy defense exists." Safeco Ins., 118 Wash.2d at 393, 823 P.2d 499 (citing 1 Windt, supra, § 2.02, at 27-28). The issue here is whether the same reasoning applies in the first party context.
We hold coverage by estoppel in the first party context is not the appropriate remedy because, unlike third party reservation of rights cases, the loss in the first party situation has been incurred before the insurance company is aware a claim exists. Furthermore, an insurer is not liable for the policy benefits but, instead, liable for the consequential damages to the insured as a result of the insurer's breach of its contractual and statutory obligations. In third party reservation of rights cases, though, coverage by estoppel is an appropriate remedy because the insurer contributes to the insured's loss by failing to fulfill its obligation in some way. This contribution to loss is particularly true when acts of the insurer have led the insured to believe it is covered under the terms of the policy. See 1 Windt, supra, *940 §§ 2.03, 2.05 (insurer's breach of its duty to investigate should not result in the insurer being estopped from denying coverage). This difference between third party cases and first party cases warrants different remedies.
We hold Coventry is not entitled to coverage by estoppel or a return of a portion of its premium but that its damages are limited to the amounts it has incurred as a result of the bad faith investigation, as well as general tort damages. The record before us establishes that Coventry was required to go through some financial expense as a result of the bad faith investigation conducted by American States. These expenses include the cost of hiring their own experts and investigators to determine if American States should have covered the claim. To that extent, Coventry is entitled to make a claim for those amounts and damages normally associated with bad faith and CPA violations. Coventry must, like every other plaintiff, establish those damages at trial.

CONCLUSION
American States violated its duty of good faith and fair dealing in investigating Coventry's claim. Although coverage was eventually shown to be excluded under the policy, American States still breached its contract with Coventry by acting in bad faith and, thus, harming Coventry. As such, Coventry is entitled to bring actions for bad faith and violation of the CPA. Coventry is not entitled, however, to coverage by estoppel or return of a portion of the premium paid. Rather, Coventry's damages should be limited to its expenses as a result of American States' bad faith acts and ensuing tort and CPA damages.
Reversed and remanded.
DOLLIVER, SMITH, GUY, MADSEN, ALEXANDER, TALMADGE, SANDERS, JJ., concur.
DURHAM, Chief Justice, concurring.
I agree with the majority that neither a presumption of harm nor coverage by estoppel applies when an insurer conducts a bad faith investigation of a first-party insured's claim. I write separately to clarify that actual harm remains an essential element of a cause of action for bad faith handling of an insurance claim.
The majority identifies the first issue as whether a first-party insured may state a bad faith or Consumer Protection Act (RCW 19.86) (CPA) cause of action in the absence of coverage. In my view, this is a nonissue because the Court of Appeals decision below recognizes that a first-party insured may maintain a bad faith or CPA claim in the absence of coverage where the bad faith investigation actually harms the insured. Coventry Assocs. v. American States Ins. Co., 86 Wash.App. 845, 851, 939 P.2d 1245 (1997) ("We hold that an insured may not bring a bad faith or Consumer Protection Act claim based on procedural errors or shortcomings in an insurer's investigation unless the insurer wrongfully denies the claim or the errors harm the insured." (emphasis added)). The majority, in resolving this nonissue, states that when an insurer breaches its duty to act in good faith, "a cause of action exists." Majority at 938. At first blush, it might appear that the majority is suggesting that insurer bad faith alone is actionable.
Yet, the majority correctly observes that harm is an essential element of both bad faith and CPA causes of action and that the Plaintiff is entitled to recover only to the extent it can establish that it incurred expenses as a direct result of any bad faith on the part of the Defendant. Majority at 935-936, 939. Therefore, when an insurer breaches its duty to act in good faith, a cause of action exists only if such bad faith causes resulting harm to the insured. Because there are unresolved questions of fact as to whether the Defendant acted in bad faith and, if so, whether the Plaintiff suffered resulting harm, I agree with the majority that summary judgment was improperly granted.
NOTES
[1] RCW 48.30.010 also provides that insurers are required to act in good faith toward their insureds and must not engage in unfair trade practices. RCW 48.30.010(1) states, "[n]o person engaged in the business of insurance shall engage in unfair methods of competition or in unfair or deceptive acts or practices in the conduct of such business as such methods, acts, or practices are defined pursuant to subsection (2) of this section."
[2] In Deese and Rawlings, the Arizona Supreme Court cited the emphasized portion of this quotation from Tank with approval. Deese, 172 Ariz. at 507-08, 838 P.2d 1265; Rawlings, 151 Ariz. at 156-57, 726 P.2d 565.
[3] In 1997, the Court of Appeals decided Farrington Corp. v. Commonwealth Land Title Ins. Co., 86 Wash.App. 399, 936 P.2d 1157 (1997). The Court held that although material issues of fact existed as to whether Commonwealth conducted a reasonable investigation, Farrington could not bring a bad faith claim because the policy provided no coverage. Farrington, 86 Wash.App. at 405, 936 P.2d 1157. Farrington is inconsistent with our holding in this case and, to the extent it stands for a proposition counter to our holding, it is overruled.
[4] Amicus Mutual of Enumclaw Insurance Company et al. (Insurance Companies) raise this same argument, stating: "Premiums pay for the right to receive policy benefits for claims within the policy coverage. They do not pay for a right to have the insurer investigate independent of coverage." Br. of Amicus Curiae at 14-15 (emphasis added).
[5] As the Arizona Supreme Court noted in Rawlings v. Apodaca, 151 Ariz. 149, 726 P.2d 565 (1986), the insurance industry itself lends credence to the fact the insureds seek more than a bare promise to pay certain claims. "Advertising programs portraying customers as being `in good hands' or dealing with a `good neighbor' emphasize a special type of relationship between the insured and the insurerone in which trust, confidence and peace of mind have some part." Rawlings, 151 Ariz. at 155 n. 3, 726 P.2d 565.