[No. 80359-5.   En Banc.]
Argued February 28, 2008.     Decided November 26, 2008.

*Certification From the United States District Court for the Western District of Washington in*

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, *Plaintiff*, v. ONVIA, INC., ET AL., *Defendants*.

124

*Daniel L. Syhre* and *Joseph D. Hampton* (of *Betts Patterson & Mines, PS*) (*Charles E. Spevacek* and *Michael P. McNamee*, of counsel), for plaintiff.

*Daniel J. Dunne, Jr.* (of *Orrick Herrington & Sutcliffe*); *Mark A. Griffin*, *Margaret E. Wetherald*, and *Karin B. Swope* (of *Keller Rohrback, LLP*); and *Roblin J. Williamson* (of *Williamson & Williams*), for defendants.

*Laura Foggan, John C. Yang,* and *Marilee C. Erickson* on behalf of American Insurance Association, Complex Insurance Claims Litigation Association, National Association of Mutual Insurance Companies, and Property Casualty Insurers Association of America, amici curiae.

¶1 STEPHENS, J. — The United States District Court for the Western District of Washington, pursuant to chapter 2.60 RCW, certified the following questions to this court:

¶2 (1) Under Washington law, does an insured have a cause of action against its liability insurer for common law procedural bad faith for violation of the Washington Administrative Code and/or for violation of the Washington Consumer Protection Act (CPA), chapter 19.86 RCW, even though a court has held that the insurer had no contractual duty to defend, settle, or indemnify the insured?

¶3 (2) If the answer to the first question is "yes," then:

¶4 (a) Should the court require the insured to prove that the insurer's conduct caused actual harm, or should the court apply a presumption of harm?

¶5 (b) How should damages be measured?[1]

¶6 In addressing certified questions we consider the legal issues not in the abstract but based on the certified record provided by the federal district court. RCW 2.60.030; see In re Elliott, 74 Wn.2d 600, 446 P.2d 347 (1968). The record here establishes that the insurer did not act in bad faith in refusing to defend, settle, or indemnify its insured on a third-party liability claim. The issue then is whether an insured may pursue common law bad faith and CPA claims based solely on procedural missteps by the insurer in handling the claim, once a court has determined that the insurer breached no duty to defend, settle, or indemnify the insured. We hold that, while such claims are viable, the insured in this circumstance is not entitled to a presumption of harm or coverage by estoppel, but must prove all elements of the claim, including actual damages.

## FACTS AND PROCEDURAL HISTORY[2]

¶7 This action arose out of a claim made on a third-party liability policy. Onvia, Inc., is a for-profit corporation that sells a service called "DemandStar," which provides businesses

---

[1] Order Certifying Issues to Supreme Court of Washington, .St. Paul Fire & Marine Ins. Co. v. Onvia, Inc., No. C06-1056RSL (W.D. Wash. July 9, 2007).

[2] The district court prepared a statement of facts, with the assistance of counsel, for the purpose of deciding these certified questions. The statement of facts in this opinion comes entirely from the document prepared by the district court, often word-for-word.

with notices of opportunities to bid for government contracts. Onvia had liability insurance with St. Paul Fire and Marine Insurance Company.

¶8 On February 3, 2005, Responsive Management Systems (RMS) served Onvia with a class action complaint (the "underlying action"), alleging that Onvia engaged in "fax blasting," the mass sending of unsolicited advertisements via facsimile, in violation of state and federal law.

¶9 On February 24, 2005, Onvia's insurance broker allegedly tendered the underlying action to St. Paul by faxing St. Paul a copy of RMS's original complaint, a tender letter, and a notice form. (St. Paul states that it has no evidence in its file that it received the February 2005 communication, but there is evidence that the tender was successfully faxed to St. Paul.) St. Paul did not respond to Onvia's tender letter of February 24, 2005. There is evidence that the February 24, 2005 letter was resubmitted to St. Paul on August 5, 2005. Then in September, RMS filed an amended complaint. At some point—the exact date is disputed—Onvia sent a copy of the amended complaint to St. Paul.

¶10 St. Paul sent a letter dated November 4, 2005, denying coverage and defense. Following subsequent discussions between St. Paul and Onvia, St. Paul reaffirmed its denial on March 24, 2006.

¶11 Between February 2005 and the conclusion of the underlying action, Onvia defended itself with its own counsel in litigation and in settlement negotiations. In April 2006, while a motion for class certification was pending, Onvia and RMS entered into a settlement agreement whereby Onvia stipulated to class certification, entry of a judgment in favor of the class in the amount of $17.515 million, and an assignment of its right against St. Paul to RMS. In exchange, RMS agreed to execute the judgment only against St. Paul. The King County Superior Court found the settlement reasonable, approved the settlement, and entered final judgment for the settlement amount at a November 17, 2006 final approval hearing.

¶12 On July 26, 2006, St. Paul sought a declaratory judgment against RMS, which is the action giving rise to the certification. St. Paul asserted that it had no duty to defend, settle, or indemnify Onvia in the underlying action. RMS responded with three counterclaims: (1) breach of the contractual duties to defend, indemnify, and settle; (2) bad faith breach of the duties to defend, indemnify, and settle; and (3) procedural bad faith and violation of the CPA related to St. Paul's handling of the Onvia tender. Because RMS held the assignment of Onvia's claims, Onvia was dismissed from this lawsuit by stipulation of the parties and order of the court.

¶13 The parties cross-moved for partial summary judgment on St. Paul's claims and RMS's first two counterclaims. The court granted St. Paul's' motion, holding (1) that St. Paul had no duty to defend, indemnify, or settle the underlying action against Onvia and (2) that St. Paul did not commit bad faith when it refused to defend Onvia.

¶14 Thus, the only remaining claims are RMS's counterclaims for common law "procedural" bad faith and violation of the CPA. RMS alleges that St. Paul violated a number of Washington insurance claims-handling regulations in bad faith, including by failing to timely acknowledge and act upon the notice of the claim and tender of defense, and by failing to promptly or reasonably investigate the claim. St. Paul moved for summary judgment, arguing that in the absence of a duty to defend, it could not be liable for procedural missteps in processing Onvia's claim. The district court certified the above questions of law arising from this claim to this court.

## ANALYSIS

¶15 Washington's insurance bad faith law derives from statutory and regulatory provisions, and the common law. The insurance code begins with recognition that "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain

from deception, and practice honesty and equity in all insurance matters." RCW 48.01.030. The insurance code permits the insurance commissioner to promulgate administrative regulations governing the claims-handling process. RCW 48.30.010. To this end, the commissioner has adopted chapter 284-30 WAC. A violation of the insurance code or a regulation promulgated thereunder constitutes an unfair practice under the CPA. *See* RCW 48.30.010. This court long ago recognized that a single violation of a claims-handling regulation may violate the CPA. *Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 114 Wn.2d 907, 921, 792 P.2d 520 (1990).

¶16 Liability insurance is third-party coverage and provides policyholders with two main benefits: payment and defense. That is, insurance companies generally owe their insureds a duty to pay and a duty to defend. *Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wn.2d 903, 914, 169 P.3d 1 (2007). Related to the two main benefits of an insurance contract, liability insurers owe a duty to settle claims against their insureds. *See Besel v. Viking Ins. Co. of Wis.*, 146 Wn.2d 730, 735-36, 49 P.3d 887 (2002).

## Bad Faith Claim

¶17 The duty of good faith is not specific to either of the main benefits of an insurance contract but permeates the insurance arrangement. *See Kallevig*, 114 Wn.2d at 916 (citing RCW 48.01.030). The good faith duty between an insurer and an insured arises from a source akin to a fiduciary duty. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385-86, 715 P.2d 1133 (1986). "This fiduciary relationship, as the basis of an insurer's duty of good faith, implies more than the 'honesty and lawfulness of purpose' which comprises a standard definition of good faith. It implies 'a broad obligation of fair dealing' and a responsibility to give 'equal consideration' to the insured's interests." *Id.* (citation omitted) (quoting *Tyler v. Grange Ins.*

*Ass'n*, 3 Wn. App. 167, 173, 177, 473 P.2d 193 (1970)).[3] Both Washington courts and the legislature have consistently imposed a duty of good faith on the insurance industry. *Id.* at 386.

¶18 The duty of good faith is applicable to both first-party and third-party coverage. *See, e.g.*, *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 961 P.2d 933 (1998) (finding that failure to investigate first-party claim was in bad faith); *Dan Paulson*, 161 Wn.2d 903 (sending subpoena and engaging in ex parte communication constituted bad faith in third-party case).

¶19 "An action for bad faith handling of an insurance claim sounds in tort." *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992). "Claims of insurer bad faith 'are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty.' " *Dan Paulson*, 161 Wn.2d at 916 (quoting *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485, 78 P.3d 1274 (2003)). " 'In order to establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or unfounded.' " *Id.* (quoting *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 560, 951 P.2d 1124 (1998)). "Whether an insurer acted in bad faith is a question of fact." *Smith*, 150 Wn.2d at 484 (citing *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 796, 16 P.3d 574 (2001)).

*Cause of Action for Bad Faith Claims-Handling in the Absence of a Duty To Defend, Settle, or Indemnify*

¶20 The first certified question asks us to decide whether an insured has a cause of action for mishandling of a claim once a court has held that the insurer did not breach

---

[3] Because an insurer must give *equal* consideration to an insured, but is not required to put the insured above itself, this court has also noted that the relationship between an insured and an insurer is not a true fiduciary relationship. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992). This is consistent with many other jurisdictions that recognize this "quasi-fiduciary" relationship. WILLIAM M. SHERNOFF, SANFORD M. GAGE & HARVEY R. LEVINE, INSURANCE BAD FAITH LITIGATION § 1.05 (1991).

its duties to defend, settle, or indemnify. In the third-party context, an insurer can act in bad faith even where coverage is later determined to be unavailable. *Kirk*, 134 Wn.2d 558 (finding refusal to defend third-party claim in bad faith actionable even though insured's claim was not covered); *Butler*, 118 Wn.2d 383 (holding insurer's delays constituted bad faith in third-party reservation of rights defense even though insured was not covered); *Tank*, 105 Wn.2d 381 (recognizing failure to defend in third-party reservation of rights case constituted bad faith even though insured was not covered). This case presents a slightly different set of facts than in previous cases. Here the duty to defend, either outright or under a reservation of rights, is not implicated. The certified question presumes that St. Paul properly denied the insured's tender of defense.

¶21 The duty to defend is also obviously never implicated in a first-party insurance policy. But in *Coventry*, this court held that a first-party insured has a cause of action for bad faith investigation even where there is ultimately no coverage. 136 Wn.2d at 279. The court in *Coventry* reasoned that an "insurer's duty of good faith is separate from its duty to indemnify if coverage exists." *Id*. This holding reflects settled Washington bad faith law. *Coventry* simply recognized the principles enunciated by the legislature in chapter 48.01 RCW: that the insurance business requires good faith, honesty, and equity in all insurance matters. *Id*. at 276 (quoting RCW 48.01.030). Although *Coventry* involved a first-party claim and here we have a third-party claim, there is no appreciable difference between this case and *Coventry* with respect to whether bad faith claims mishandling remains actionable in the absence of coverage. Despite the fact that the benefit of the insurance contract (i.e., payment) was not available to the insured in *Coventry*, we nevertheless found bad faith could be asserted where the insurer mishandled the claim by failing to conduct a reasonable investigation. Likewise, although here the benefit of the insurance contract (i.e., defense, settlement, and payment) is not available to the insured, if St. Paul handled

the claim in bad faith, a cause of action based on this conduct remains available to the insured. We see no reason to depart here from the principle announced in *Coventry*.

¶22 Under Washington law every insurer has a duty to act promptly, in both communication and investigation, in response to a claim or tender of defense. WAC 284-30--330(2)-(4), -360(1), (3), -370. St. Paul's alleged failure to do so here forms the basis of RMS's bad faith claim. Resp. Br. of Def. at 19 n.9. St. Paul asks this court to find that there is no liability for violation of insurance claims-handling regulations absent a bad-faith breach of the other obligations imposed under coverage provisions of the contract. But under state law insurers have not only a general duty of good faith, RCW 48.01.030, but also a specific duty to act with reasonable promptness in investigation and communication with their insureds following notice of a claim and tender of defense. These are necessarily obligations read into every policy.[4] Moreover, although none of our cases address the specific scenario here, we have consistently recognized that the duty of good faith is broad and all encompassing and is not limited to an insurer's duty to pay, settle, or defend. "[A]n insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interests." *Tank*, 105 Wn.2d at 386.[5]

¶23 We conclude that a third-party insured has a cause of action for bad faith claims handling that is not dependent on the duty to indemnify, settle, or defend.

---

[4] For example, as noted above, RCW 48.01.030 requires honesty and equity in all insurance matters. It does not distinguish between insurance matters in which there is a duty to defend, settle, or pay, and those where there is not.

[5] Although *Tank* deals specifically with the duty to defend in a third-party context, our discussion was broken into three subparts: "(1) the evolution of the duty of good faith imposed on insurers in this state, (2) the nature of this duty in a reservation of rights context, and (3) application of the good faith duty in a reservation of rights context to the facts of this case." 105 Wn.2d at 385. The discussion quoted above—regarding the broad nature of the duty of good faith and its permeation in all areas of the insurer/insured relationship—is part of the general analysis of the duty of good faith and is not limited to the reservation of rights context.

*Presumption of Harm and Remedy*

¶24 The second certified question asks whether, given the existence of a cause of action, the insured is entitled to a presumption of harm and coverage by estoppel, or instead must prove actual harm and damages. As noted above, in answering the certified questions in this case we must presume that St. Paul's rejection of the insured's claim and tender of defense was proper. The certified facts and questions, as well as the briefing from the parties, focus on St. Paul's lack of action immediately following the insured's tender of the underlying action to St. Paul in February 2005. Hence, the facts of this case do not present a situation substantially different from that in *Coventry*, where the focus of the bad faith claim was on acts that arose immediately following the claim tender. *Coventry*, 136 Wn.2d at 274. As in *Coventry*, a reservation of rights or failure to defend in any capacity is not at issue. Therefore, no rebuttable presumption of harm can arise here, and the measure of damages offered in *Coventry* should apply here also. The remedy of coverage by estoppel is not recognized in this context. *Compare Coventry*, 136 Wn.2d at 283-86 (declining to apply coverage by estoppel) *with Kirk*, 134 Wn.2d at 563-65 (applying coverage by estoppel). As in *Coventry*, RMS must prove actual harm, and its "damages are limited to the amounts it has incurred as a result of the bad faith . . . as well as general tort damages." *Coventry*, 136 Wn.2d at 285.

## Consumer Protection Act Claim

¶25 As St. Paul notes in its reply brief, a violation of any regulation enumerated in chapter 284-30 WAC will automatically establish the first element of a CPA claim. Reply Br. of Pl. at 14 (citing *Kallevig*, 114 Wn.2d at 920-21). Indeed, this court has held that where a violation of chapter 284-30 WAC is shown, the first two elements of a CPA claim are proved. *Hayden v. Mut. of Enumclaw Ins.*

*Co.*, 141 Wn.2d 55, 62, 1 P.3d 1167 (2000). In order to prevail on a CPA claim, the claimant must satisfy the five-part test announced in *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.*: (1) an unfair or deceptive act or practice (2) in trade or commerce (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and (5) which injury is causally linked to the unfair or deceptive act. 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986). *Hayden*, *Kallevig*, and *Hangman Ridge* make no mention of either bad faith or a duty to defend, indemnify, or settle as requisites of a CPA claim.

■■■ ¶26 St. Paul relies on *Overton v. Consolidated Insurance Co.*, which states, "A denial of coverage does not constitute an unfair or deceptive act or practice as long as it is based on reasonable conduct of the insurer." 145 Wn.2d 417, 434, 38 P.3d 322 (2002). *Overton* does not control here. RMS's CPA claim does not rely on its failed claim of bad faith denial of coverage. Instead, it alleges violations of chapter 284-30 WAC related to delays in investigation and communication. St. Paul argues that RMS cannot show the public interest or injury elements of a CPA claim, but that question is not before us. On the limited question of whether an insured may bring a CPA claim in the absence of a duty to settle, indemnify, or defend, we hold that it may. To the extent that RMS prevails in federal court on its CPA claim, its remedy on that claim is limited to the statutory remedies available to any successful CPA claimant. *Hayden*, 141 Wn.2d at 63.

CONCLUSION

¶27 In response to the certified questions, we hold that there is a cause of action for bad faith claims-handling in a third-party context, which is not dependent on whether the insurer has breached its duty to defend, settle, or indemnify. We further hold that under the certified facts of this case, *Coventry* controls the question of harm and remedy;

RMS must show actual harm and may recover only for its proven damages. Finally, we hold that the CPA recognizes a claim for violation of claims-handling regulations that does not depend on a finding of bad faith or the existence of a duty to settle, indemnify, or defend.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.