[No. 41035-1-I.   Division One.   February 22, 1999.]
AMERICAN ECONOMY INSURANCE COMPANY, *Appellant,* v. MARK LYFORD, *Respondent.*

*Hal Thurston* of *Simonarson, Visser, Zender & Thurston,* for appellant.

*Dean R. Brett* and *Philip J. Buri* of *Brett & Daugert, Attorneys at Law, L.L.P.,* for respondent.

KENNEDY, C.J. — American Economy Insurance Company appeals the trial court's summary judgment order—which declared that American Economy has a contractual obligation to provide underinsured motorist coverage (UIM) to its insured, Mark Lyford, for a September 22, 1994 accident—contending that Lyford is not entitled to UIM benefits because Lyford failed to give advance written notice to American Economy of a settlement agreement with a tortfeasor that released the tortfeasor from further liability. Lyford requests attorney fees and costs on appeal.

Because American Economy was already fully apprised of Lyford's efforts to obtain recompense from the tortfeasor, Lyford did not have the burden of affirmatively providing American Economy with additional written notice of the pending settlement. Accordingly, the trial court properly granted summary judgment to Lyford. We affirm, and award attorney fees and costs to Lyford.

## FACTS

On September 22, 1994, Mark Lyford was riding his bicycle when a car driven by Mary Kink struck him, injuring his shoulder. Kink had a liability policy with $100,000 limits and PIP coverage, and Lyford had a UIM policy with $100,000 limits and PIP coverage.

On July 26, 1995, Kink's PIP limits having been exhausted, Lyford applied for PIP benefits from American Economy. This is the first notice American Economy received of the accident. American Economy paid Lyford $7,000.90 in PIP benefits. American Economy then wrote a letter to Kink's insurer, asking if Kink's policy limits were

adequate to cover Lyford's bodily injury claims. American Economy also requested that Kink's insurer reveal its policy limits so American Economy could "make an independent evaluation regarding an Uninsured Motorist exposure[.]" Clerk's Papers at 239.

On October 30, 1995, Lyford's attorneys sent a letter to American Economy, offering "to protect its subrogated claim, for our usual one third of the gross recovery." Clerk's Papers at 163. American Economy responded on November 8, 1995, declining the offer: "American States will handle the recovery of our subrogation. We will not be hiring [your law firm] to recover our PIP subro[gation] interest." Clerk's Papers at 165.

On January 19, 1996, American Economy set aside a $20,000 reserve for Lyford's UIM Bodily Injury coverage. American Economy's claims file contains the following summary, which is dated February 16, 1996: "It is likely that [Kink's insurer] will pay their policy limits and Mr. Lyford will ask us for an Uninsured Motorists settlement. If this comes to pass, I intend to obtain all of the medical records and [Kink's insurer's] entire medical file if possible." Clerk's Papers at 256. American Economy's May 3, 1996 claim activity log contains an entry referencing a call to Kink's insurer, during which American Economy learned that Kink's insurer "will evaluate [Lyford's case] soon and make an offer." *Id.* at 221.

Lyford filed a personal injury complaint against Kink on June 7, 1996. On July 19, 1996, Lyford told American Economy that he had received an offer from Kink's insurer but that he was asking for more. On August 21, 1996, Lyford's attorneys informed American Economy in writing that they had settled Lyford's claim with Kink for $90,000. In this letter, Lyford's attorneys also stated: "We hereby demand payment of the entire UIM policy limit which we understand to be $100,000." Clerk's Papers at 158. This is the first written notice American Economy received of Lyford's settlement with Kink. On August 28, 1996, Lyford and Kink stipulated to an order, dismissing Lyford's personal injury complaint with prejudice.

On February 28, 1997, American Economy sought a declaratory judgment that Lyford prejudiced American Economy's rights and voided the insurance policy terms by settling with Kink, and is, therefore, not entitled to UIM benefits for the September 22, 1994 accident.[1] Lyford counterclaimed for a declaratory ruling that American Economy has a contractual obligation to provide UIM coverage for that accident. Both parties moved for summary judgment, and the trial court granted Lyford's motion. American Economy appeals.

## DISCUSSION
### I. Settlement Negotiations

American Economy maintains that Lyford—its insured—is not entitled to UIM benefits because he failed to provide it with written notice of his settlement negotiations with Kink—the tortfeasor—and, as a result, prevented American Economy from protecting its right of reimbursement from Kink. Lyford responds that no such written notice was required because American Economy's actual notice of the accident and the ongoing negotiations between Lyford and Kink's insurer sufficiently afforded American Economy the opportunity to protect its right of reimbursement.[2]

■ ■ "Although the relationship of the insurer and the insured is contractual, the source of the obligation to offer UIM coverage is statutory." *Fisher v. Allstate Ins. Co.*, 136

---

[1]This petition stated—and Lyford does not dispute—that the parties stipulated the value of Lyford's damages to be $170,000. Although it is unclear from the record when the parties entered into this stipulation, Lyford contends that the parties did not agree to this amount until January 1997.

[2]Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "The motion will be granted, after considering the evidence in the light most favorable to the nonmoving party, only if reasonable persons could reach but one conclusion." *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998). "When reviewing a summary judgment order, an appellate court engages in the same inquiry as the trial court." *Id.*

Wn.2d 240, 245, 961 P.2d 350 (1998); *see* RCW 48.22.030(2). "The [UIM] statute embodies a strong public policy to ensure the availability of a source of recovery for an innocent automobile-accident victim when the responsible party does not possess adequate liability insurance." *Fisher*, 136 Wn.2d at 245.

"The Legislature has . . . granted [the UIM insurer] a right of reimbursement from the insured when a settlement or judgment results in an excess recovery." *Hamilton v. Farmers Ins. Co.*, 107 Wn.2d 721, 732, 733 P.2d 213 (1987) (emphasis omitted). That statute, RCW 48.22.040(3), provides:

> [T]he insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such insured against any person or organization legally responsible for the bodily injury, death, or property damage for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.

In *Hamilton*, our Supreme Court explained that a UIM insurer may secure these rights by substituting a payment to the insured in an amount equal to the settlement offer prior to the release of the tortfeasor. *Hamilton*, 107 Wn.2d at 733-34. The UIM insurer "is entitled to notice of the tentative settlement and an opportunity to protect those potential rights by paying [UIM] benefits before release." *Id.* at 733 (quoting *Schmidt v. Clothier*, 338 N.W.2d 256, 263 (Minn. 1983)). But the *Hamilton* court ultimately held that the UIM insurer in that case did not have rights of subrogation that were prejudiced by a settlement—to which it refused to consent—between its insured and the tortfeasor. *Id.* at 734.

American Economy contends that under *Hamilton*, Lyford was *required* to submit written notice of his pending settlement with Kink to American Economy. It maintains that Lyford's failure to do so denied it an opportunity to protect its right of reimbursement under RCW 48.22.040(3). We disagree.

■ In *Fisher*, our Supreme Court addressed the issue of notice in the UIM context to determine whether a UIM insurer was bound by the results of arbitration between its insured and that tortfeasor. *Fisher*, 136 Wn.2d 249-50. The court held that a UIM insurer that has notice of a lawsuit between its insured and a tortfeasor, and an opportunity to intervene in that action, is bound by the results of the arbitration.[3] The court stated that the inquiry "was whether the insurer was 'fully apprised of [the insured's] efforts to obtain recompense' from the tortfeasor." *Id.* at 250 (quoting *Finney v. Farmers Ins. Co.*, 21 Wn. App. 601, 618, 586 P.2d 519 (1978), *aff'd*, 92 Wn.2d 748, 600 P.2d 1272 (1979)). Explaining the *Finney* court's reasoning, the *Fisher* court stated that if the UIM insurer knew a lawsuit was filed and that the insureds were attempting to prove liability, the insurer had to know that the determination of the tortfeasor's liability might be crucial to their potential UIM liability. *Id.* (construing *Finney*, 21 Wn. App. at 618).

Here, it is undisputed that American Economy was fully apprised of Lyford's efforts to obtain recompense from Kink. Lyford notified American Economy of the accident when he applied for PIP benefits from American Economy; American Economy rejected Lyford's attorneys' offer to protect its rights in exchange for a fee; both Lyford and Kink's insurer verbally informed American Economy of the negotiations between Lyford and Kink's insurer; and the American Economy claims file indicates that American Economy anticipated a UIM claim from Lyford.

Although Lyford did not provide American Economy with written notice of the pending settlement negotiations, under *Hamilton* and *Fisher*, we conclude that American Economy nevertheless had actual knowledge in this case of

---

[3]In addition, the *Fisher* court noted—in dicta—that this rule applies for settlements: "[O]ther jurisdictions hold to the same rule in other contexts such as settlements. Notice of a *suit* is required, rather than notice of a pending *settlement*. This is because the possibility of settlement or arbitration is implicit in the context of litigation." *Fisher*, 136 Wn.2d 250-51 (citations omitted). But the record in the present case is silent regarding whether Lyford gave American Economy notice of his lawsuit against Kink.

all the information it needed to protect its right of reimbursement under RCW 48.22.040(3).

Where the insured properly notifies his or her UIM carrier of an accident and the carrier has actual notice of the insured's ongoing settlement negotiations, the burden of protecting the UIM carrier's rights falls on the UIM carrier. We emphasize that the insured does not have the burden under *Hamilton* of affirmatively notifying his or her UIM carrier in writing of pending settlements where the UIM carrier has actual knowledge similar to that American Economy had in the present case. Nonetheless, to prevent litigation such as the present case, we do *encourage* insureds to give notice to UIM carriers if there is any reasonable possibility that a UIM claim will be filed.

## II. Terms of the Policy

American Economy properly concedes that the terms of its insurance contract with Lyford do not require him to provide written notice of a potential UIM claim or settlement negotiations with a tortfeasor. Nonetheless, American Economy contends that Lyford breached the terms of his insurance policy that required him to, inter alia, (1) do whatever is necessary to enable American Economy to exercise its rights of recovery; (2) do nothing after loss to prejudice American Economy's rights of recovery[4]; (3) promptly send American Economy copies of any notices or legal papers received in connection with the accident or loss; and (4) cooperate with American Economy in any

---

[4]The "GENERAL PROVISIONS" section of Lyford's policy with American Economy states:

Our Right To Recover Payment

If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person must do:

    1.   Whatever is necessary to enable us to exercise our rights; and

    2.   Nothing after loss to prejudice them.

Clerk's Papers at 198.

investigation or settlement.[5] American Economy argues that Lyford's breach of these terms of the insurance policy relieved American Economy of its obligation to pay UIM benefits. Accordingly, it maintains that the trial court erred by declaring that American Economy must provide UIM coverage to Lyford.

Contractual duties in UIM policies are generally valid and enforceable if they do not violate the UIM statute or public policy. *See Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 88, 794 P.2d 1259 (1990); *Downie v. State Farm Fire & Cas. Co.*, 84 Wn. App. 577, 579, 929 P.2d 484, *review denied*, 132 Wn.2d 1003 (1997). But "[e]ven where an insured breaches the insurance contract, the insurer is not relieved of its duty to pay unless it can prove actual and substantial prejudice caused by the insured." *Pederson's Fryer Farms, Inc. v. Transamerica Ins. Co.*, 83 Wn. App. 432, 437, 922 P.2d 126 (1996), *review denied*, 131 Wn.2d 1010 (1997).

To prove such prejudice, the insurer must demonstrate some concrete detriment—not speculation—resulting from the breach, together with some specific harm to the insurer caused thereby. *Canron, Inc. v. Federal Ins. Co.*, 82 Wn. App. 480, 486-87, 918 P.2d 937 (1996), *review denied*, 131 Wn.2d 1002 (1997). "[P]rejudice will be presumed only in extreme cases and is . . . an issue upon which one claiming prejudice has the affirmative burden of proof." *Pederson's Fryer Farms*, 83 Wn. App. at 438 (citation omitted).

In *Thompson v. Grange Ins. Ass'n*, 34 Wn. App. 151, 163-

---

[5]Under a section titled, "DUTIES AFTER AN ACCIDENT OR LOSS," Lyford's policy with American States provides:

Coverage is conditional upon your fulfillment of these requirements.

. . . .

B. A person seeking any coverage must:

    1.    Cooperate with us in the investigation, settlement or defense of any claim or suit.

    2.    Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

Clerk's Papers at 198.

64, 660 P.2d 307 (1983), this court affirmed a trial court's finding of no prejudice to Grange, the insurer, explaining that "[d]espite the statute of limitation now barring the pursuit of any claim against the tortfeasor, Grange never demonstrated that such person had any assets it might have recovered." Here, American Economy maintains it was prejudiced because Kink had more that $330,000 in unencumbered property, but it did not learn this until after Lyford settled with Kink.

We find no breach of the contract terms of the insurance policy at issue in this case. Nonetheless, even if Lyford had breached the terms of the policy, American Economy failed to demonstrate any resulting concrete detriment or specific harm. Considering American Economy's knowledge of the accident and knowledge of Lyford's negotiations with Kink, any harm American Economy suffered cannot be causally linked to Lyford's alleged failures to: do whatever was necessary to enable American Economy to exercise its rights of recovery; do nothing after loss to prejudice American Economy's rights of recovery; promptly send American Economy copies of any notices or legal papers received in connection with the accident or loss; or cooperate with American Economy in any investigation or settlement.

American Economy's assertion that Kink had available resources is insufficient under the facts of this case to sustain its burden of proving actual and substantial prejudice. As we have already observed, American Economy had all the information it needed to protect its rights before Lyford settled with the tortfeasor. That the tortfeasor had assets over and above her policy limits does not alter the analysis. Accordingly, American Economy is not relieved of its duty to pay UIM benefits to Lyford and the trial court properly granted Lyford's motion for summary judgment. For the same reasons, the court properly denied American Economy's summary judgment motion.

### III. Attorney Fees and Costs on Appeal

Lyford requests attorney fees and costs on appeal

under *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), and RAP 18.1. In *Olympic Steamship*, our Supreme Court held that the insured has the right "to recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim of the insured, regardless of whether a lawsuit is filed against the insured." *Id.* at 52. Where, as here, the insured must appear in a declaratory action, "the conduct of the insurer imposes upon the insured the cost of compelling the insurer to honor its commitment[.]" *Id.* at 53. Because Lyford was forced to incur attorney fees to compel American Economy to provide UIM coverage, and because he is the prevailing party on appeal, he is entitled to attorney fees and costs.

This matter is referred to a Commissioner of this court to determine the amount of the fee award upon Lyford's compliance with the procedures set forth in RAP 18.1.

Affirmed.

Cox and ELLINGTON, JJ., concur.