[No. 46498-1-I.   Division One.   August 27, 2001.]

L. DENNIS GRIFFIN, ET AL., *Appellants*, v. ALLSTATE INSURANCE COMPANY, *Respondent*.

134

*Randall C. Johnson, Jr.* (of *Badgley-Mullins Law Group*), for appellants.

*Pellegrino L. Certa* and *Thomas Lether* (of *Clarke, Bovingdon, Cole, Mills & Lether, P.C.*), for respondent.

ELLINGTON, J. — Subject to policy-based defenses, an insurer is liable for fees and costs incurred before the insured tenders defense of a covered claim. We therefore reverse summary judgment for the insurer. Because questions of fact exist on bad faith and Consumer Protection Act claims, we also reverse summary judgment dismissal of those claims.

## FACTS

L. Dennis and Marilyn Griffin reside on a farm of some 40 acres in Ravensdale, Washington. They purchased homeowners insurance from Allstate Insurance Company. After the Griffins cleared and graded a field for pasture and improved a horse track, their neighbors, the Andersons, brought suit, alleging the Griffins' activities deposited fill in a stream and obstructed its natural flow, rendering the Andersons' property unsuitable for certain purposes and threatening the Andersons' domestic water supply. The Griffins hired a lawyer, who obtained a stipulation and order of dismissal because service was defective.

The Andersons refiled their suit, alleging the same facts

and asserting the same claims. The two complaints are almost identical.[1] The Griffins tendered their defense to Allstate. Its agent inspected the property, took photographs, met with the Griffins, and spoke with the Andersons' attorney. Allstate also took Mr. Griffin's recorded statement. Allstate then denied any obligation to the Griffins on several grounds. The Griffins filed this action for declaratory relief, bad faith, and violation of the Consumer Protection Act (CPA).[2]

On summary judgment, the trial court ruled the Griffins were entitled to a defense, and that Allstate was required to indemnify them for their costs in defending the Anderson suit. Allstate does not appeal that ruling. The trial court limited its award of defense fees and costs to those incurred after the Griffins tendered defense to Allstate. On Allstate's summary judgment motion, the court dismissed the bad faith and CPA claims. The Griffins appeal.

## DISCUSSION

■ We conduct de novo review of summary judgment, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, to determine whether any genuine issue of material fact is in dispute preventing the moving party from obtaining judgment as a matter of law.[3] We review de novo the interpretation of an insurance policy.[4]

### Scope of the Duty to Defend

■ Allstate assumed a broad duty to defend the Griffins in a suit for covered damages:

Losses We Cover Under Coverage X. Subject to the terms, conditions and limitations of this policy, Allstate will pay

---

[1] The only difference between the complaints appears to be the addition of codefendants, who are not parties to this appeal.

[2] Ch. 19.86 RCW.

[3] *Jack v. Paul Revere Life Ins. Co.*, 97 Wn. App. 314, 318, 982 P.2d 1228 (1999), *review denied*, 140 Wn.2d 1019 (2000).

[4] *Capelouto v. Valley Forge Ins. Co.*, 98 Wn. App. 7, 13, 990 P.2d 414 (1999).

> damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.
>
> We may investigate or settle any claim or suit for covered damages against an insured person. If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent.[5]

The duty to defend is "one of the main benefits of the insurance contract."[6] " 'The general rule is that insurers who have reserved the right and duty to defend are obliged to defend any suit which alleges facts wherein, if proven, would render the insurer liable.' "[7] The triggering event is the filing of a complaint alleging covered claims: " 'The key consideration in determining whether the duty to defend has been invoked is whether the allegation [in the complaint], if proven true, would render [the insurer] liable to pay out on the policy.' "[8] Allstate wrongly refused the Griffins' tender of defense, thereby breaching the policy. Following an insurer's breach, the insured must be put in as good a position as he or she would have been in had the contract not been breached.[9] Where the breach is the failure to defend, damages may include "the amount of expenses, including reasonable attorney fees the insured

---

[5] Clerk's Papers at 56.

[6] *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 392, 823 P.2d 499 (1992).

[7] *Greer v. N.W. Nat'l Ins. Co.*, 109 Wn.2d 191, 197, 743 P.2d 1244 (1987) (quoting *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 486, 687 P.2d 1139 (1984)); *Viking Ins. Co. v. Hill*, 57 Wn. App. 341, 346, 787 P.2d 1385 (1990).

[8] *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561, 951 P.2d 1124 (1998) (quoting *Farmers Ins. Co. v. Romas*, 88 Wn. App. 801, 808, 947 P.2d 754 (1997)) (first alteration added). *See also Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.3d 1167 (2000); *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 425, 983 P.2d 1155 (1999) ("[A]n insurer's duty to defend an action brought against its insured arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage."), *review denied*, 140 Wn.2d 1009 (2000).

[9] *Greer*, 109 Wn.2d at 202-03.

incurred defending the underlying action."[10]

■ Allstate urges us to adopt a bright-line rule that pre-tender fees[11] and costs are not recoverable, contending the majority of states disallow recovery of pre-tender defense costs. But Allstate offers few authorities, none helpful to our analysis. The cases either do not discuss the issue presented here, and merely recite, without analysis, that the duty to defend "arises" upon tender;[12] or involve denial of pre-tender fees because the insured's late tender breached the policy and excused the duty.[13] Allstate fails to persuade us the majority of states take Allstate's view,[14] but the question is irrelevant, because in Washington, the rule is otherwise.

In Washington, the duty to defend arises upon the filing of a covered complaint, and the duty is not excused by late notice unless the insurer is prejudiced. *Unigard Insurance Co. v. Leven*[15] involved claims for indemnification and defense in the context of suits for environmental contamination at eight Washington sites where Leven's corporations operated. Unigard's policies covered Leven's companies and Leven personally. Defense of Leven's companies was tendered and accepted. Leven himself, however, did not invoke a right to a defense until seven years after he was designated a potentially liable person by the Department of

---

[10] *Kirk*, 134 Wn.2d at 561.

[11] Allstate contends the issue is not reviewable because Griffins' notice of appeal is from the summary judgment dismissing the bad faith and CPA claims, not the earlier order on fees. The fees issue is Griffins' first assigned error, however, and was fully briefed by Allstate. Therefore, the technical violation does not preclude review. *See* RAP 1.2(a); *State v. Olson*, 126 Wn.2d 315, 320-21, 893 P.2d 629 (1995) (technical violation such as failure to cite order in notice of appeal or assign error in opening brief will normally be overlooked, particularly where no prejudice results to other party).

[12] *See Aerojet-Gen. Corp. v. Trans. Indem. Co.*, 17 Cal. 4th 38, 948 P.2d 909, 920 (1997) (holding insurer must incur site investigation costs as part of fulfilling duty to defend).

[13] *See Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 394, 399 n.19 (5th Cir. 1995) (under Texas law, breach of "voluntary payment" provision precludes liability for pre-tender defense costs), *overruled on other grounds by Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 241 F.3d 396, 398 n.3 (5th Cir. 2001); *Faust v. The Travelers*, 55 F.3d 471, 472 (9th Cir. 1995) (same, under California law); *N. Ins. Co. of N.Y. v. Allied Mut. Ins. Co.*, 955 F.2d 1353, 1360-61 (9th Cir. 1992) (same, under California law); *Towne Realty, Inc. v. Zurich Ins. Co.*, 201 Wis. 2d 260, 548 N.W.2d 64 (1996) (tender is condition precedent to duty to defend).

[14] For a discussion of the various approaches courts have taken to this question, see Stephen A. Klein, *Insurance Recovery of Prenotice Defense Costs*, 34 TORT & INS. L.J. 1103 (1999).

[15] 97 Wn. App. 417, 983 P.2d 1155 (1999), *review denied*, 140 Wn.2d 1009 (2000).

Ecology. He argued that Unigard's awareness of the claims was sufficient to trigger the duty to defend him, and that he was entitled to be reimbursed some $900,000 in defense costs.

We first stated the general rule: "In Washington, an insurer's duty to defend an action brought against its insured arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage."[16] We rejected Leven's argument that Unigard's awareness of the claims obligated Unigard to act: "[A]n insurer cannot be expected to anticipate when or if an insured will make a claim for coverage; the insured must affirmatively inform the insurer that its participation is desired."[17]

We then turned to whether Unigard owed Leven reimbursement of his defense costs. In Washington, an insured's breach will excuse the insurer's performance only where the insurer can demonstrate prejudice: "But even when an insured breaches an insurance contract, the insurer is not relieved of its duty to defend unless it can prove that the late notice resulted in actual and substantial prejudice."[18] Because Unigard demonstrated such prejudice from Leven's delay, Unigard had no duty to defend.[19] Whether fees were incurred before or after tender played no part in our analysis.[20]

---

[16] *Leven*, 97 Wn. App. at 425.

[17] *Leven*, 97 Wn. App. at 427. While couched in part in language echoing the frequent "arises upon tender" statement of the duty, our discussion in *Leven* involved the question of breach, not a determination of the scope of the duty.

[18] *Leven*, 97 Wn. App. at 427.

[19] *Leven*, 97 Wn. App. at 431.

[20] The parties dispute the effect of two other cases, neither of which is helpful here. In *Prudential Property & Casualty Insurance Co. v. Lawrence*, 45 Wn. App. 111, 724 P.2d 418 (1986), the court applied the rule that when there is no reasonable means of prorating costs of defending covered claims and uncovered claims, the insurer is liable for the entire cost of defense; pre-tender fees were denied because "there was no way to segregate the covered claims and associated costs from any uncovered claims." *Prudential*, 45 Wn. App. at 121 (citing *Nat'l*

Allstate relies upon *Leven* for the proposition that no duty arises until tender. But *Leven* discusses tender only in the context of whether Unigard breached its duty to defend by failing to act before defense was formally requested. Rather than the bright-line rule Allstate urges us to apply, the *Leven* court discussed at length whether Unigard was prejudiced by Leven's violation of the notice clause in the policy.

Certainly breach of the duty to defend cannot occur before tender. The scope of a duty, however, is defined not by its breach, but by the contract. Allstate undertook a broad duty to defend.[21] Even if Allstate's policy required tender as a condition precedent to the duty to defend (which it does not), a showing of actual and substantial prejudice is required before an insured's breach will release an insurer from its duty under the policy—including the duty to defend.[22] Except in extreme cases, we do not presume prejudice.[23] Allstate alleges no prejudice at all.

This is not to say that insureds may freely conduct their own litigation and then seek reimbursement. Allstate's promise is to defend through counsel of its own choosing. Prejudice to the insurer may follow from an insured's retention of counsel who may charge higher rates or fail to

---

*Steel Constr. Co. v. Nat'l Union Fire Ins. Co.*, 14 Wn. App. 573, 576, 543 P.2d 642 (1975); *Waite v. Aetna Cas. & Sur. Co.*, 77 Wn.2d 850, 856, 467 P.2d 847 (1970)). Here, segregation of uncovered claims and associated costs is not an issue. In *Lawrence v. Northwest Casualty Co.*, 50 Wn.2d 282, 286-87, 311 P.2d 670 (1957), the court denied costs incurred in defending a clearly uncovered claim, but awarded costs incurred after the complaint was amended to allege a clearly covered claim. Again, no similar circumstances exist here.

[21] *See Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 124 Wn.2d 789, 803-04, 881 P.2d 1020 (1994).

[22] *See Leven*, 97 Wn. App. at 427; *Am. Econ. Ins. Co. v. Lyford*, 94 Wn. App. 347, 355, 971 P.2d 964 (1999). Whether tender is a condition precedent or an implied covenant is not relevant. The distinction has been held a "legalistic conundrum" in the context of insurance policies; either way, a showing of actual prejudice is required before an insurer will be released from its duty to defend. *See Or. Auto. Ins. Co. v. Salzberg*, 85 Wn.2d 372, 376-77, 535 P.2d 816 (1975); *see also Sherwood Brands, Inc. v. Hartford Accident & Indem. Co.*, 347 Md. 32, 698 A.2d 1078 (1997).

[23] *Pub. Util. Dist. No. 1*, 124 Wn.2d at 804 (except in extreme cases, the insurer bears the burden of showing actual prejudice).

pursue appropriate strategies. Prejudice may be more difficult to show where an insured is forced to incur expense before tender can be made,[24] but the issue is still factual. Here, however, Allstate refused to defend.

Allstate's duty is limited by policy-based defenses. Allstate asserts only the "voluntary payment" provision:

**Section II Conditions**

**1. What You Must Do After an Accidental Loss**

In the event of **bodily injury** or **property damage**, **you** must do the following:

. . . .

Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.[25]

The purpose of a voluntary payment provision is to " 'obviate the risk of a covinous or collusive combination between the assured and the injured third party and to restrain the assured from voluntary action materially prejudicial to the insurers contractual rights.' "[26]

The Griffins contend their defense expenses were not voluntarily incurred, and that the voluntary payments clause is aimed at settlements, not defense costs. But even assuming Allstate could prove breach of the voluntary payment provision, Allstate must also prove actual prejudice.[27] Again, Allstate has never asserted it was prejudiced.

The court erred in failing to award reasonable pre-tender defense expenses. The Griffins have requested and are

---

[24] For example, an order to show cause may require an immediate defense, or those responsible for the affairs of a disabled insured may be initially unaware of coverage.

[25] Clerk's Papers at 61.

[26] *Roberts Oil Co. v. Transam. Ins. Co.*, 113 N.M. 745, 833 P.2d 222, 229 (1992) (internal quotation marks omitted).

[27] *Pub. Util. Dist. No. 1*, 124 Wn.2d at 804 (prejudice requirement applies to the voluntary payment provision).

entitled to *Olympic Steamship*[28] fees on this issue, and are directed to comply with RAP 18.1.

## Bad Faith and CPA

The Griffins claimed Allstate acted in bad faith in failing to conduct a reasonable investigation and failing to defend, and violated the CPA. The trial court dismissed these claims on summary judgment, on grounds the Griffins could establish no damages.

Insurers have a statutory and common law duty to act in good faith toward an insured.[29] Liability insurers have a "heightened duty of good faith" when a claim is presented against an insured.[30] The duty to act in good faith is "fairly broad and may be breached by conduct short of intentional bad faith or fraud."[31] Breach of the duty gives rise to a remedy sounding in tort, independent of the insurance contract.[32]

## Reasonableness of Allstate's Actions

To establish the tort of bad faith breach of contract, an insured must show the insurer's action was unreasonable, frivolous, or unfounded.[33] The determinative question is the reasonableness of the insurer's action in light of all the facts and circumstances of the case.[34] "As long as the insurance company acts with honesty, bases its decision on adequate information, and does not overemphasize its own interests, an insured is not entitled to base a

---

[28] *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).

[29] RCW 48.01.030; *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 386, 715 P.2d 1133 (1986).

[30] *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 281, 961 P.2d 933 (1998).

[31] *Indus. Indem. Co. of the N.W. v. Kallevig*, 114 Wn.2d 907, 916-17, 792 P.2d 520 (1990).

[32] *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 389, 393-94, 823 P.2d 499 (1992).

[33] *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 560, 951 P.2d 1124 (1998).

[34] *Kallevig*, 114 Wn.2d at 920.

bad faith claim or CPA claim against its insurer on the basis of a *good* faith mistake."[35]

At oral argument of this matter, Allstate's counsel contended that the Supreme Court's recent decision in *Ellwein v. Hartford Accident & Indemnity Co.*[36] is controlling and requires us to affirm dismissal of the bad faith and CPA claims. *Ellwein* involved an allegation of bad faith handling of an underinsured motorist (UIM) claim ("The real issue in this case is: what is the nature of a UIM insurer's duty of good faith toward its insured?").[37] The court's principal inquiry was whether a UIM insurer's duty is properly characterized as "quasi-fiduciary." Noting that the relationship between a UIM insurer and its insured is adversarial in nature,[38] the court held the insurer does not have the enhanced obligation of a quasi-fiduciary relationship, as it would in other circumstances, but that the duties of good faith and fair dealing remain.[39]

In its discussion of bad faith, the court noted the rules set forth above.[40] The court also stated that "[i]nsureds must prove bad faith as a matter of law," and that the insurer's conduct should be analyzed under a "fairly debatable" standard:

> "If reasonable minds could *not* differ on the coverage-determining facts, a verdict should be directed or summary judgment rendered on coverage. If that cannot be done, it ordinarily must follow that the insurer had reasonable grounds to dispute the facts, precluding any possibility of bad faith."[41]

---

[35] *Coventry*, 136 Wn.2d at 280 (emphasis added).

[36] 142 Wn.2d 766, 15 P.3d 640 (2001).

[37] *Ellwein*, 142 Wn.2d at 778.

[38] *Ellwein*, 142 Wn.2d at 779 (citing *Fisher v. Allstate Ins. Co.*, 136 Wn.2d 240, 249, 961 P.2d 350 (1998)).

[39] *Ellwein*, 142 Wn.2d at 780-81.

[40] *Ellwein*, 142 Wn.2d at 775-76.

[41] *Ellwein*, 142 Wn.2d at 777 (quoting William T. Barker & Paul E.B. Glad, *Use of Summary Judgment in Defense of Bad Faith Actions Involving First Party Insurance*, 30 TORT & INS. L.J. 49, 56 (1994)); *see also* Douglas G. Houser, *Good Faith as a Matter of Law: The Insurance Company's Right to Be Wrong*, 27 TORT & INS. L.J. 665, 665-70 (1992)). Judging from the *Ellwein* court's footnote, the "fairly

The difficulty lies in applying this test in the summary judgment context. *Ellwein* contains language suggesting that a more demanding summary judgment standard applies to an insured making a bad faith claim:

> Applying the bad faith standard in the summary judgment context, an insurer is ordinarily entitled to summary judgment dismissal of a bad faith claim unless the insured shows there was *no* reasonable basis for the insurer's actions. *Stated another way*, where there is no real dispute that an insurer had a reasonable basis for its actions, dismissal of the bad faith claim on summary judgment is appropriate.[42]

The court's first sentence suggests that an insured cannot survive summary judgment unless the insured can prove a negative by establishing the absence of a jury question as to reasonableness. Such a burden would contravene long-standing case law.[43] Nothing in the opinion indicates such an intent, and the court's next sentence is a simple statement of the familiar summary judgment standard. Further, the court's application of the standard was not a departure from traditional analysis.

In *Ellwein*, there was no real dispute as to the basis for the insurer's actions in settlement negotiations. All relevant facts were known to both parties. Because Hartford had a legitimate factual and legal basis for asserting Ellwein's comparative fault, the court held the insurer's

debatable" standard is identical to the traditional Washington "reasonable justification" standard. *Compare Ellwein*, 142 Wn.2d at 776 n.7, *with Kirk*, 134 Wn.2d at 561 (bad faith failure to defend) *and Kallevig*, 114 Wn.2d at 920 (insurer acted without reasonable justification in denying coverage). The Court's discussion of the "fairly debatable" standard indeed cites several "reasonable justification" Washington cases. *See Ellwein*, 142 Wn.2d at 776 (citing *Kirk*, 134 Wn.2d at 560; *Kallevig*, 114 Wn.2d at 917). *See also Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 16 P.3d 574 (2001).

[42] *Ellwein*, 142 Wn.2d at 776 (citing *Keller v. Allstate Ins. Co.*, 81 Wn. App. 624, 633, 915 P.2d 1140 (1996) (second emphasis added)). We note that these two sentences are not equivalent statements of the same proposition. While the first sentence would place a burden of proving a negative on the insured, the second sentence is a simple statement of the usual summary judgment standard.

[43] *See, e.g., Kallevig*, 114 Wn.2d at 917, cited with approval by *Ellwein*, 142 Wn.2d at 776); *see also Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 452, 842 P.2d 956 (1993).

actions in settlement negotiations were reasonable as a matter of law and could not be the basis of a bad faith claim. This holding does not depart from traditional summary judgment analysis, and is consistent with previous bad faith case law.[44]

*Ellwein* concerns the test of bad faith in the UIM context, for which it stated a new rule. We do not read *Ellwein* as intending a change in the law of summary judgment.[45] When a question of material fact exists as to whether the insurer's coverage position was "fairly debatable" or its actions reasonably justified, summary judgment is not permitted.

Here, questions exist as to Allstate's prior knowledge of and postclaim investigation into the activities of the insured, as well as the relationship of those activities to the coverage determination. For example, Allstate invoked the business pursuits exclusion, asserting that the activities leading to the Anderson suit, as described by Mr. Griffin during Allstate's investigation, were excluded business activities. The Griffins respond that Allstate always knew the insured property was a working farm, and that Mr. Griffin's statements revealed nothing more. As evidence of Allstate's prior knowledge, the Griffins point out that Allstate increased coverage limits on the property to cover the outbuildings, barn, loafing sheds for the horses, and the tractor; and that later, its agent toured the property following a windstorm. The Griffins also assert Allstate's investigation of their claim was inadequate. Failure to conduct a

[44] *See, e.g., Capelouto v. Valley Forge Ins. Co.,* 98 Wn. App. 7, 22, 990 P.2d 414 (1999).

[45] We note that one week after its decision in *Ellwein,* the court decided *Van Noy v. State Farm Mut. Auto. Ins. Co.,* 142 Wn.2d 784, 16 P.3d 574 (2001). Without mentioning *Ellwein,* the *Van Noy* court reiterated that the insurer has a quasi-fiduciary obligation to the insured, relied upon traditional bad faith cases that apply the reasonable justification analysis, and stated the summary judgment standard on Van Noy's breach of contract claim thusly: "The contractual issue, therefore, revolves around the reasonableness of State Farm's action in handling the claims that were presented to it. As the Court of Appeals correctly observed, that issue should be resolved by a trier of fact." *Van Noy,* 142 Wn.2d at 796.

reasonable investigation constitutes bad faith.[46] Allstate refused to defend in part on grounds the Andersons' suit alleged no property damage, and alleged only intentional acts, but these assertions were belied by the plain language of the complaint, which alleged property damage and negligence.

The court below ruled on summary judgment that the Griffins were entitled to a defense, and Allstate does not appeal that ruling. There is thus no question of fact about Allstate's obligation to defend. Under these circumstances, this court cannot decide as a matter of law that Allstate's investigation was reasonable or that its refusal to defend was reasonably justified.

*Evidence of Damages*

■■ One element of every bad faith or CPA claim is resulting harm.[47] In bad faith cases involving third party claims against the insured, a presumption of harm applies.[48] Allstate contends that the Griffins can establish no harm.

The Griffins claim their damages include the loss of use of funds paid for defense costs, and the cost of retaining an expert to review Allstate's file and testify about Allstate's handling of their claim.[49] As to the claims-handling expert, the Griffins rely on the following language from *Coventry Associates v. American States Insurance Co.*,[50] discussing what damages are recoverable for bad faith:

> The record establishes that Coventry incurred certain expenses as a result of American States' bad faith investigation. For example, Coventry hired geotechnical and civil engineers

[46] *Coventry*, 136 Wn.2d at 279.

[47] *See Coventry*, 136 Wn.2d at 276.

[48] *Coventry*, 136 Wn.2d at 281.

[49] The expert was asked "to review materials in connection with Allstate's investigation and denial of coverage" of the Anderson claim. Clerk's Papers at 311. His declaration discusses whether Allstate followed good claims-handling practices.

[50] 136 Wn.2d 269, 961 P.2d 933 (1998).

to review the facts and circumstances surrounding the incident causing damage to the construction site. Coventry also hired insurance experts to determine if coverage was denied in bad faith. To the extent Coventry can establish it incurred expenses as a direct result of American States' breach of contract and bad faith actions, it was harmed.[51]

■ The parties dispute the effect of this passage. Allstate argues that fees only for coverage experts are awardable, not fees for experts on claims handling. But as the Griffins point out, the *Coventry* court's language contains no such limitation; experts there included both coverage experts (engineers) and insurance experts. The test enunciated in *Coventry* is simply whether the expenses were incurred as a "direct result" of the breach of contract or bad faith. In *Coventry*, this involved issues of fact. The same is true here.

■ As to damages under the CPA,[52] a plaintiff must show injury to its business or property.[53] The court may increase the award to three times the actual damages (not to exceed ten thousand dollars) so long as some monetary damages are proved.[54] Loss of use of money is a recognized damage:

A loss of use of property which is causally related to an unfair or deceptive act or practice is sufficient injury to constitute the fourth element of a Consumer Protection Act violation. The injury element will be met if the consumer's property interest or money is diminished because of the unlawful conduct even if

---

[51] *Coventry*, 136 Wn.2d at 283.

[52] Allstate argues the Griffins failed to assign error to dismissal of the CPA claim, so this court should decline to reach the issue. The CPA claims are derivative of the bad faith claims, and the issues section of the Griffins' brief clearly addresses these claims. We therefore reach the issue. *See State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995) (this court does not abuse its discretion by considering the merits of appeal where appellant's challenge is clear but technically flawed).

[53] *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 792, 719 P.2d 531 (1986).

[54] RCW 19.86.090; *Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 855-56, 792 P.2d 142 (1990).

the expenses caused by the statutory violation are minimal.[55]

The Griffins' loss of use of their own money constitutes damages under the CPA.

The trial court erred in dismissing the Griffins' bad faith and CPA claims, because issues of fact exist regarding the reasonableness of Allstate's actions, and the Griffins incurred at least loss-of-use damages.

## CONCLUSION

The trial court erred in denying pre-tender defense costs and dismissing claims of bad faith and claims under the CPA. We reverse and remand for further proceedings.

WEBSTER and Cox, JJ., concur.

After modification, further reconsideration denied October 10, 2001.

Review denied at 146 Wn.2d 1005 (2002).

---

[55] *Mason,* 114 Wn.2d at 854 (citations omitted).